UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STARLEY ARIAS,
    *Plaintiff*,

v.

STATE OF CONNECTICUT
DEPARTMENT OF ENERGY AND
ENVIRONMENTAL PROTECTION,
    *Defendant*.

No. 3:24-cv-01060 (VAB)

**RULING AND ORDER ON THE MOTION TO DISMISS**

Starley Arias ("Plaintiff") previously worked for the Connecticut Department of Energy and Environmental Protection ("DEEP" or "Defendant"). He claims to have been discriminated against, harassed, and ultimately fired because of his race, color, and gender. He also claims to have been retaliated against for filing charges of Discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the U.S. Equal Employment Opportunity Commission ("EEOC"). He seeks declaratory and monetary relief on four counts alleging discrimination and harassment as to his race, color, and gender, and retaliation under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000, *et. seq.*

DEEP has filed a motion to dismiss Mr. Arias's Complaint.[1]

---

[1] In his original Complaint, Plaintiff also sought relief on four counts based on violations of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b)(1). Compl., ECF No. 1 ¶¶ 76-104 (June 19, 2024). Following DEEP's filing of its motion to dismiss, ECF No. 15, Plaintiff conceded that the counts in the Complaint based on CFEPA must be dismissed as they were barred by sovereign immunity. Reply to Resp. to Mot. to Dismiss, ECF No. 31 at 1 (Oct. 10, 2024). Thus, only the counts under Title VII, Counts 1–4 of the Complaint, remain, and the Court need not and will not address DEEP's arguments under Federal Rule of Procedure 12(b)(1). DEEP also raised arguments under Rules 12(b)(2), and 12(b))5), regarding lack of personal jurisdiction, and for insufficiency of service. ECF No. 15 at 4-5. Following Mr. Arias' response to its motion to dismiss, DEEP now "agrees that the Plaintiff has now properly served the Defendant and withdraws its personal jurisdiction argument." Reply at 1. As a result, the Court need not and does not address any of the arguments related to these provisions of Rule 12.

For the reasons stated herein, the motion to dismiss is **DENIED**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

    A. **Factual Allegations**[2]

Starley Arias is a resident of the State of Connecticut, and a Hispanic male with an allegedly dark complexion. Compl., ECF No. 1 ¶¶ 4, 10 (June 19, 2024). On August 27, 2020, DEEP allegedly hired him as a research analyst. *Id.* ¶¶ 11-12. Research analysts allegedly are considered "trainees" until they successfully complete two years of employment, at which point they are elevated to the full position of research analyst; and Mr. Arias allegedly expected this promotion after successful completion of two years of employment. *Id.* ¶ 13. The promotion allegedly results in increased benefits including increased pay. *Id.* ¶ 14.

At all relevant times, Victoria Hackett was the Deputy Commissioner of DEEP. *Id.* ¶15. She is allegedly not a member of any of Mr. Arias's protected classes. *Id.* ¶16. Starting from the beginning of his tenure, Ms. Hackett would allegedly express unfounded criticisms of Mr. Arias, including stating that he would be unable to handle the transition to full employment with DEEP and that he might "go rogue." *Id.* ¶ 17. Ms. Hackett allegedly never expressed unfounded criticisms about similarly situated employees. *Id.*

Hackett's criticisms were allegedly unfounded because, from his date-of-hire to approximately December 2021, Mr. Arias allegedly performed his duties in at least a satisfactory manner, according to DEEP's employee service ratings in periodic departmental reviews. *Id.* ¶¶ 18–19.

---

[2] The following facts are taken from Mr. Arias's complaint. They are set forth in the light most favorable to Mr. Arias as the non-moving party whose allegations are accepted as true for the purposes of evaluating a motion to dismiss.

Around January 2022, DEEP allegedly appointed Shubhada Kambli as Mr. Arias's supervisor. Ms. Kambli is allegedly not a member of any of Mr. Arias's protected classes. *Id*. ¶ 22. In April 2022, Ms. Kambli allegedly told Mr. Arias that his work was not at "research analyst level," despite his satisfactory ratings on previous employee evaluations. *Id.* ¶ 25. She also allegedly scheduled, cancelled, rescheduled, and re-cancelled some of Mr. Arias's performance reviews. *Id.* ¶ 26.

Ms. Kambli allegedly made efforts to "set Plaintiff up for failure," including an instance where she sent Mr. Arias an e-mail asking for a response, did not afford him reasonable time to respond, and then scolded Mr. Arias that he did not respond fast enough. *Id.* ¶ 27. She also allegedly chided Mr. Arias for missing her phone calls, despite instances where he was unable to answer due to being on another work-related phone call or being in the restroom. *Id.* ¶ 28. She also allegedly issued him a lower rating on a subsequent employee evaluation despite the fact that she was only his supervisor for roughly half the evaluative period. *Id.* ¶ 30.

Because of his hiring date, Mr. Arias's "trainee" status allegedly should have ended on August 27, 2022. Because of Ms. Kambli's lower performance evaluation, however, he allegedly was not elevated to full research analyst, his training period was extended for an additional six months, and he was placed on a performance improvement plan. *Id.* ¶ 31. He thus allegedly did not receive the increase in pay and benefits afforded to non-trainee research analysts. *Id.* ¶ 32.

Ms. Kambli allegedly asserted that Mr. Arias had a conflict of interest on a particular project, despite the fact that he had made a full disclosure to DEEP about any potential conflict and received clearance to continue on the project. *Id.* ¶ 33. She also allegedly refused to issue assignments to Mr. Arias and directed his other coworkers, who were not supervisors, to issue

work to him instead. *Id.* ¶ 34. She allegedly set impossible deadlines for Mr. Arias to complete his work. *Id.* ¶ 35.

Mr. Arias allegedly complained to his union about Ms. Kambli's treatment. A union representative allegedly had at least one meeting with Ms. Kambli, during which she was asked to provide specific examples of Mr. Arias's job performance issues, and she was allegedly unable to do so. *Id.* ¶ 36.

On October 4, 2022, Mr. Arias's supervisors allegedly summoned him to a meeting related to a complaint received about him. Mr. Arias, DEEP's labor relations specialist, Mr. Arias's union representative, and Ms. Kambli all attended the meeting. Once there, Mr. Arias learned that a complaint had been lodged again him by Deputy Commissioner Hackett, who was not in attendance. *Id.* ¶ 37.

At the meeting, the labor relations specialist allegedly described Ms. Hackett's complaint. At a work function, Mr. Arias had allegedly been exhibiting signs of agitation, including using an elevated and confrontational tone of voice. *Id.* ¶ 38. Ms. Kambli allegedly added that she had observed Mr. Arias being disengaged, not making eye contact with her, and that his behavior had a "chilling effect on the group." *Id.* The union representative asked if there would be consequences based on the complaint, and the labor relations specialist allegedly responded that there would be no formal investigation, but the meeting was called regarding Mr. Arias's performance improvement plan. *Id.*

Mr. Arias alleged that Ms. Kambli "treated other similarly-situated employees differently than Plaintiff." *Id.* ¶ 39. In one instance, Mr. Arias and a female, non-Hispanic colleague allegedly sent an e-mail to Ms. Kambli regarding a work project. *Id.* Ms. Kambli allegedly contacted Mr. Arias and told him that the e-mail was unsatisfactory. But Ms. Kambli allegedly

told his female, non-Hispanic colleague that the e-mail was "okay" and did not similarly criticize her. Ms. Kambli also allegedly "rarely, if ever" provided Mr. Arias with the feedback or supervision he requested but did provide such requested guidance to other similarly situated employees. *Id.* ¶¶ 40–41.

Ms. Kambli also allegedly required Mr. Arias to submit a form for requesting an adjusted work schedule, even when she did not require similarly situated employees to fill out the form and allowed them to orally make schedule-adjustment requests. *Id.* ¶ 41. On at least one occasion, Mr. Arias allegedly submitted the request form, but Ms. Kambli did not process it. Mr. Arias alleges that Ms. Kambli promptly processed other similarly situated employees' request forms. *Id.* ¶ 42.

On October 12, 2022, Mr. Arias filed charges of discrimination with the CCHRO and EEOC. Compl. ¶ 43. He alleges that DEEP received a copy of the charges on October 24, 2022. *Id.* ¶ 44. After his filing the charges with EEOC and CCHRO, Ms. Kambli allegedly began treating him differently, including refraining from communicating with Mr. Arias as she had in the past. *Id.* ¶ 45. From October 2022 until December 2022, DEEP allegedly never informed Mr. Arias of any new or additional deficiencies in his performance. *Id.* ¶ 46. On December 16, 2022, DEEP allegedly fired Mr. Arias. *Id.* ¶ 47. Mr. Arias timely and properly exhausted administrative remedies and filed this lawsuit within ninety days of EEOC and CCHRO releasing jurisdiction. *Id.* ¶¶ 6-9.

### B. Procedural History

On June 18, 2024, Mr. Arias filed his Complaint. Compl.

On August 22, 2024, DEEP filed its motion to dismiss the Complaint. Mot. to Dismiss, ECF No. 15 (Aug. 22, 2024) ("Mot."); Mem. in Support of Mot. to Dismiss, ECF No. 15-1 (Aug. 22, 2024) ("Mem.").

On September 26, 2024, Mr. Arias filed a memorandum of law in opposition to Defendant's motion to dismiss. ECF No. 24, Opp'n to Mot. to Dismiss (Sept. 26, 2024) ("Opp'n").

On October 10, 2024, DEEP filed a reply in support of their motion to dismiss. Reply in Supp. of Mot. to Dismiss, ECF No. 31 (Oct. 10, 2024) ("Reply").

## II.    STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible."

*Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).[3]

---

[3] Mr. Arias refers to the *prima facie* standard set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), to explain his allegations. *See e.g.*, Mem. in Support of Opp'n to Mot. to Dismiss 26-27 (Sept. 26, 2024). But that standard does not apply at the motion to dismiss stage. *See Langer v. Hartland Bd. Ed.*, No. 22-cv-01459 (JAM) 2023 WL 6140792, at *5 (D. Conn. Sept. 20, 2023) ("The *McDonnell Douglas* burden-shifting framework applies to the analysis of discrimination claims at summary judgment but not at the stage of a motion to dismiss." (collecting cases)); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) ("[O]ur decision in *Littlejohn* makes clear that a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas,* at least as the test was originally formulated, to defeat a motion to dismiss." (citing *Littlejohn v. City of New York*, 795 F.3d 297, 306, 311 (2d Cir. 2015))).

### III.     DISCUSSION

DEEP claims that Mr. Arias fails to plead plausible claims under Title VII for either discrimination or retaliation. The Court will address each of these arguments in turn.

#### A.  The Discrimination Claims

"[I]n an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). The two adverse acts at issue here are DEEP's refusal to promote Plaintiff out of the trainee program and DEEP's termination of Plaintiff.[4] As the Second Circuit has explained, "the facts alleged in the complaint must provide at least minimal support for the proposition that the employer was motivated by discriminatory intent" in carrying out the adverse acts. *Id.* at 85.

Mr. Arias's allegations with respect to discriminatory intent are rather thin. *Compare Milledge v. City of Hartford*, 19-cv-01104 (JAM), 2020 WL 3510813, at *2 (D. Conn. June 29, 2020) ("What [was] lacking, however, [were] facts to suggest that any of the alleged abuse was *because of* [Mr.] Milledge's race . . . . [or that anyone] 'made any remarks or engaged in any conduct reflecting race-based animus or stereotypical assumptions about race.'" (emphasis in original)); *with* Compl. ¶ 38 (where Mr. Arias said that Ms. Kambli called him "disengaged" and Ms. Hackett has accused him of being agitated and "confrontational," but he did not allege that those allegations were related to his race, color, or gender). Mr. Arias also does not allege much in the way of facts to show that he was "similarly situated in all material respects to the

---

[4] "It is well-established that a failure to promote is an adverse employment action," *Barella v. Village of Freeport*, 16 F.Supp.3d 144, 162 (E.D.N.Y. 2014) (collecting cases), and "[t]ermination is indisputably an adverse action for the purposes of a Title VII [] claim[]." *Chima v. KX Techs., LLC*, No. 21-CV-00801 (JCH), 2022 WL 13682064, at *7 (D. Conn. Oct. 21, 2022).

individuals with whom he seeks to compare himself." *Milledge*, 2020 WL 3510813, at *3 (citing *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)). But, given the continued viability of his Title VII retaliation claim—as discussed below—the Court will exercise its discretion and not dismiss the discrimination claims now, and await its evaluation after the close of discovery. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."). Accordingly, the motion to dismiss Mr. Arias's discrimination claims will be denied, and any issue regarding the sufficiency of Mr. Arias's discrimination claims will be addressed following discovery and the completion, as well as review, of motion for summary judgment filings.

### B. The Retaliation Claims

Title VII also "prohibits an employer from discriminating against an employee because the employee has engaged in protected activity," and "[p]rotected activity includes opposing an unlawful employment practice or otherwise making a charge, testifying, assisting, or participating 'in any manner in an investigation, proceeding, or hearing.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)). "A plaintiff must show a connection between the protected activity and the adverse action, that is, that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* Mr. Arias alleges that his filing charges with the CCHRO and EEOC were the but-for cause of his termination. Compl. ¶ 73; *see Langer v. Hartland Bd. Ed.*, No. 22-cv-01459 (JAM), 2023 WL 6140792, at *8 (D. Conn. Sept. 20, 2023) (noting that making a complaint to CCHRO is protected activity).

To allege causation, a plaintiff must plausibly demonstrate that a defendant is aware of the protected activity. *Fay v. City of Newburg*, No. 21 Civ. 3140 (NSR), 2024 WL 4169552, at *11 (S.D.N.Y. Sept. 12, 2024) (slip copy) ("[I]t is axiomatic that a defendant 'must have knowledge of the protected activity to be able to 'engage in retaliation.'" (quoting *Little v. Nat'l Broad Co.*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002) (citations omitted))).

And, to survive a motion to dismiss, a plaintiff must plausibly allege that the protected activity was the but-for cause of the employer's actions. *Vega*, 801 F.3d at 90 ("Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation as the 'but-for' cause of the employer's adverse action." (citing *Univ. of Tex. Sw. Med. Ctr. v. Nasser*, 570 U.S. 388, 360 (2013))). "'But-for causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.'" *Id.* at 91 (quoting *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

Mr. Arias alleges, on information and belief, that Defendant "received a copy of said Charges of Discrimination on or about October 24, 2022," Compl. ¶42, and that DEEP had knowledge of the CCHRO complaint before his termination. *Id.* ¶ 44.

DEEP argues that "information and belief" is insufficient to sustain a claim under Title VII on a motion to dismiss. Mem. at 19 (citing *Salu v. Miranda*, 830 F.Appx. 341, 346 (2d Cir. 2010)). DEEP also argues that timing is Plaintiff's only basis for connecting the CCHRO complaint with his termination, and "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected

10

activity, an inference of retaliation does not arise." *Id.* at 19-20 (quoting *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)).

The Court disagrees.

"An allegation based upon information and belief is sufficient to survive a motion to dismiss . . . where the belief is based on factual information that makes the inference [] plausible." *Shore v. Mirabilio*, No. 16-cv-2078 (VLB), 2018 WL 1582548, at *7 (D. Conn. March 29, 2018) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *see Langer*, 2023 WL 6140792, at *8 ("[e]ven if a complaint is ultimately without merit, lodging the complaint is a protected activity so long as it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful, and '[t]he reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances and is evaluated from the perspective of a reasonable similarly situated person.'" (quoting *Leroy v. Delta Air Lines*, No. 21-267-cv 2022 WL 12144507, at *4 (2d Cir. Oct. 27, 2022) (summary order))).

Here, Ms. Kambli's behavior allegedly changed toward Mr. Arias after she became aware of the CCHRO filing. Compl. ¶ 45 ("Subsequent to receipt of said Charges of Discrimination, Defendant began treating Plaintiff differently than in the past. For example, Defendant refrained from communicating with Plaintiff with the same level of frequency as it had in the past."). Mr. Arias also alleged that his termination occurred fifty-three days after DEEP became aware that Plaintiff filed administrative complaints. *Id*. ¶ 47. Plaintiff further alleged that his supervisor "refrained from communicating with [him] with the same level of frequency as [she] had in the past," *id.* ¶ 45, and that he was never informed of "any new or additional deficiencies in his work performance" between October 2022, when he alleged DEEP was informed of his CCHRO complaint, and his termination in December 2022. *Id.* ¶ 46.

11

At this stage of the case, these allegations are more than sufficient to survive a motion to dismiss. *Cf. Langer*, 2022 WL 12144507, at *8 ("It would be premature . . . to decide now at the pleadings stage whether [the Plaintiff] had a good faith and reasonable belief to support her claim of religious discrimination"); *id.* at *9 ("[R]etaliatory intent may be plausibly inferred from [the Plaintiff's] allegations about the rush to fire her even though she raised her concerns about an immediate return to work."); *see also Banks*, 2023 WL 5761361, at *22 ("While this Court has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that a period of several months can demonstrate a causal connection between the protected activity and the alleged adverse action.").

Indeed, beyond temporal proximity, Mr. Arias alleges having received no additional negative feedback between early October and his termination in December, despite being on a performance plan, allegations sufficient, at least right now, to support the inference "that the adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 801 F.3d at 91 (quoting *Zann Kwan v. Andalex Grp.* LLC, 737 GF.3d 834, 846 (2d Cir. 2013)); *see Langer*, 2022 WL 12144507, at *9 ("[I]t would be premature . . . at the pleadings stage to weigh the competing evidence and to decide as a matter of law that [the Plaintiff] has not alleged plausible claim for retaliation."). Accordingly, DEEP's motion to dismiss Mr. Arias's Title VII retaliation claim will be denied.

## IV.   CONCLUSION

For the foregoing reasons, DEEP's motion to dismiss is **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 7th day of March, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE